28 C.C.P.A. (Patents)

## COVER v. SCHWARTZ.

Patent Appeals No. 4371.

Court of Customs and Patent Appeals.

Jan. 6, 1941.

Rehearing Denied Feb. 24, 1941.

Joshua R. H. Potts, Eugene Vincent Clarke, and Basel H. Brune, all of Chicago, Ill., for appellant.

A. H. Goodman, of New York City, and Nathan Schwartz, pro se., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is a patent interference proceeding in which the appellant, Cover, has appealed from the decision of the Board of Appeals of the United States Patent Office which affirmed the decision of the Examiner of Interferences in awarding to appellee, Schwartz, priority of invention in eight counts involved in the interference.

The counts originated as claims in patent 2,065,304, issued to Cover December 22, 1936, and, at the instance of the Primary Examiner, were copied, on June 15, 1937, by Schwartz, for the purpose of interference, in his application for patent which had been filed January 25, 1937.

The invention relates to a respirator adapted to being worn over the nose and mouth to protect the wearer from dust, smoke, noxious gas, etc. The applications of both parties relate to a structure comprising a body portion which is provided with an exhaust valve and an intake port,

the intake port having filter means which include a corrugated or uneven-surfaced plate for the admission of air which travels from the filter means to the face of the wearer of the respirator. A more detailed explanation of the involved invention is set out in the counts and will appear in the discussion of the several issues which follows.

We regard counts 1, 2 and 3 as illustrative of the appealed counts. They follow:

"1. In a respirator, a body portion having an exhaust valve and an intake port, said intake port having filter means comprising a corrugated plate, an aperture in said plate registering with said intake port, and a filter pad secured to said plate over said aperture.

"2. In a respirator, a body portion having an exhaust valve and an intake port, said intake port having filter means comprising a plate, an aperture in said plate registering with said intake port, and a filter pad secured to said plate over said aperture, said plate having a plurality of raised portions adapted to provide a space between said pad and plate.

"3. In a respirator, a body portion having an exhaust valve and an intake port, said intake port having filter means comprising a plate, an aperture in said plate registering with said intake port, and a filter pad over said aperture, said plate having its periphery curved inwardly to form means to secure said filter pad thereto."

■ Cover is the senior party. He filed his application for patent on January 9, 1936, his patent issuing, as aforesaid, on December 22, 1936. The junior party Schwartz filed his application on January 25, 1937. The burden was therefore upon the junior party to prove beyond a reasonable doubt that he was the first inventor. Schwartz assumed this burden and introduced many exhibits (some of which are not pertinent here) and much testimony relating to the development of his device. Cover took testimony and undertook to prove by certain exhibits, consisting of drawings, patents, and other documents, and finished respirators, that he had conceived and reduced the invention to practice earlier than any date claimed by Schwartz.

The Examiner of Interferences analyzed the Schwartz testimony and held that he was entitled to a conception date of February 7, 1935, and that he had reduced to

practice on December 3, 1935, which latter date is the filing date of an application, serial No. 52,627, forming part of Schwartz' Exhibit M, hereinafter discussed.

■ The tribunals below carefully considered the Schwartz record and after holding that he had reduced the invention to practice by the filing of the application in Exhibit M, definitely held that he had not otherwise reduced the invention to practice until he filed his instant application on January 25, 1937. While we disagree with the board as to its conclusions respecting said Exhibit M, we are in agreement with it in its findings that the remainder of the Schwartz record does not show any reduction to practice of the invention involved in the counts prior to the filing of the application at bar on January 25, 1937.

■ It is our view that the date of Schwartz' conception—February 7, 1935— is unimportant in view of our conclusion that the application in Schwartz' Exhibit M did not disclose the invention of the involved counts, and we are also of the opinion that the Schwartz record does not support a finding (nor does he contend for it here) that there was any diligence on his part beginning with the critical period and continuing to the date of the filing of his application here involved, which, as before stated, was on January 25, 1937.

The Patent Office tribunals also carefully went into the Cover record, examined his proofs and held that he was not entitled to any date for conception or reduction to practice earlier than the said filing date (January 9, 1936) of his application which ripened into said patent 2,065,304.

In view of our conclusion, it is unnecessary for us to consider the Cover testimony since the application which ripened into the Cover patent was filed on a date prior to any date to which Schwartz is entitled for reduction to practice.

The Examiner of Interferences held, and the board approved his holding, that Exhibit M clearly disclosed every element of the counts involved, and as we see it the controlling issue for us to now decide is whether or not the board erred in this respect.

The Patent Office permitted Schwartz to amend the application in Exhibit M by substituting certain new drawings which Cover contends contain new matter. In view of our conclusion that Schwartz did not in

the application in Exhibit M, either before or after said amendment, disclose certain elements of the involved counts, it is unimportant to further consider this issue. The drawings, however, are herewith reproduced in order that the exact position of the parts hereinafter discussed may be fully understood.

Cover contends, among other things, that each of the counts involved calls for a body portion and a plate separate from the body portion and that in the disclosure in figures 4 and 5 of the application in Exhibit M, as well as in the respirators, introduced by Schwartz as exhibits and alleged to respond to the counts, there is no plate separate from the body portion. In

view of our conclusion we do not need to pass upon this contention.

It is next contended that the limitation "an aperture in said plate registering with said intake port," found in all the counts, is not supported by the controverted Schwartz disclosure. Schwartz in testimony and in brief points out that his aperture 14 is his intake port. In other words, he contends that the element "intake port" and the element "aperture" are met by his opening 14. If so, and if the limitation is to be read on the drawings, it must follow that the aperture registers with itself. Any reasonable construction of the language of the counts bars the conclusion that it was ever intended to mean that the aperture in the plate registered with itself. In Cover, where the involved counts originated, there is an aperture in the plate and an intake port in the body. The aperture in the plate exactly registers with the intake port in the body and they are separate elements. We think the term "registering" used in the counts was intended to be given and should be given its ordinary meaning which requires that the registering parts coincide or correspond exactly. For registering parts to have "exact correspondence" there must be more than one part.

In the Oxford Dictionary the verb "register" is defined as follows: "4. To coincide or correspond exactly. * * * To adjust with precision, so as to secure the exact correspondence of parts."

This court in Re Spinasse, 69 F.2d 109, 21 C.C.P.A., Patents, 883, quoted the above definition of the term with approval in a situation much like the one at bar.

In Webster's New International Dictionary, the verb "register" is defined as follows: "2. To correspond exactly one with another; to fit correctly in a relative position; to be in correct alignment one with another, as rivet holes; * * *."

In Hawkins Mechanical Dictionary is found the following: "register. * * * (3) A shop term applied to the fitting of one section to another, to cause parts to coincide accurately. The term is applied to the good fitting of pins and holes, rebates, rings," etc.

A case quite in point on this subject, although it relates to patent infringement, is Victory Belt Co. v. Marshall Field & Co., 7 Cir., 300 F. 67, 70, 71. This case involved the construction of a patent claim containing the language "having a portion adapted to register with a portion [etc.]". The claim also contained the phrase "and aligned end portions" which referred to another element. The Circuit Court of Appeals for the Seventh Circuit held that the term "register" in the claim meant " 'to make correspond exactly one with another; to fit correctly in a relative position; to be in correct alignment one with another as rivet holes' " and pointed out that the term "align" was not used synonymously with the term "register."

It has been suggested that the involved counts read upon the original drawings in the application in Exhibit M when the filter holder and plate and related parts are to be regarded as the intake port, and the hole in the plate regarded as the aperture. Assuming that it be proper to so apply the counts to the controverted drawing, the situation is not changed because while the aperture 14 may be in alignment or immediately behind the opening in the filter holder where the air comes in, it cannot be said to register with the front filter holder opening, since the aperture is at the top of the plate and is shown to extend less than half way across the same.

Under the above-quoted definitions, which we think are the proper ones to consider, the aperture cannot be held to register with the intake port even if the intake port was regarded as the point where the air first is taken into the device. Each of the counts involved contains the above-quoted limitation "an aperture in said plate registering with said intake port" and in view of our conclusion that Schwartz' application in Exhibit M, neither before nor after amendment, disclosed a structure responding to this limitation, it is not necessary for us to consider other respects in which Cover claims the said Schwartz disclosure is deficient.

It is interesting to note that the exact question which, as is above indicated, we regard as controlling was not specifically referred to in any manner by either tribunal below, nor is it discussed in appellee's brief except that he says, "The plate 27 has an aperture 14 which registers with the intake port 14," and appellant's brief makes no mention of this subject matter except to propound the query: "We ask, where does Schwartz disclose a rubber body portion having a port and a separate plate having an aperture registering with the separate port?"

The record shows that these counts were only copied into the Schwartz application after the Cover patent had issued and at the suggestion of the Primary Examiner. The record further discloses that in connection with a motion to shift the burden of proof, Schwartz or his attorneys at one time were of the opinion that the wording of the counts at bar was not supported by Exhibit M for the reason that there must be a separate plate. Schwartz later contended that all the elements of the counts were disclosed in Exhibit M. While these last-stated facts are not of controlling importance, we think it proper to make reference to them. Moreover, the devices of the parties and the main conception of their respective inventions are so wholly different that the involved counts, if placed in a patent to Schwartz, would be "interlopers." See Cleveland Gas Burner & Appliance Co. v. American Heater Corp., 8 Cir., 38 F.2d 760, 763.

We think the board was in error in affirming the decision of the Examiner of Interferences in awarding priority defined by the involved counts to the party Schwartz, and its decision so doing is reversed.

Reversed.